**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:18-CV-20726-UNGARO**

THE HAYS GROUP, INC.,

               Plaintiff,

v.

DEBORAH AICHELE,

               Defendant.

_____/

**AMENDED COMPLAINT - JURY DEMAND**

Plaintiff The Hays Group, Inc. ("The Hays Group"), for its Amended Complaint against Defendant Deborah Aichele ("Defendant"), states and alleges as follows:

**INTRODUCTION**

1.     The Hays Group, a national insurance brokerage operation, brings this lawsuit against its former employee, Defendant Deborah Aichele, a licensed broker, to recover for the significant losses to it caused by Defendant's scheme to defraud insureds and to seek relief based on Defendant's breach of her employment agreement with The Hays Group.

2.     Through a pattern of wire fraud, Defendant created fictitious insurance policies, insurance proposals, and insurance certificates that purported to provide more insurance coverage for the insured clients' automobile dealerships than was provided by their applicable insurance carriers. This inflated and fraudulent insurance coverage was not commensurate with the premium that was paid by the insured client. Thus, The Hays Group's clients were misled by Defendant into believing that they had more insurance coverage than they had and for which they paid. The Hays Group was misled by Defendant to believe that the insurance coverage which Defendant

represented to clients was at all times the insurance coverage actually provided by the client's insurance carrier and consistent with the amount of premium charged for such coverage.

3.      Since learning of this activity by Defendant, The Hays Group has incurred significant costs to terminate Defendant, make its insureds whole, revise the affected policies, and absorb costs to insureds when necessary.

4.      Additionally, during her employment by The Hays Group, Defendant's illegal and fraudulent conduct allowed her to maintain and increase her book of business and receive tainted commissions for her book of business.

5.      Further, since being terminated by The Hays Group, Defendant has disclosed The Hays Group's confidential client information to a competing firm that The Hays Group has reason to believe is her new employer and has, on information and belief, solicited The Hays Group's clients in violation of her employment agreement with The Hays Group.

## PARTIES

6.      The Hays Group is a Minnesota corporation with its principal place of business at 80 South Eighth Street, Minneapolis, Minnesota 55402. It is registered to do business as a foreign corporation in the State of Florida.

7.      The Hays Group is an insurance brokerage operation with more than 30 offices nationwide. It provides custom insurance solutions to commercial clients in many sectors, including aviation, automotive, hospitality, technology, and financial services, among others.

8.      Defendant Deborah Aichele is a Florida resident who, on information and belief, resides at 1500 South Ocean Boulevard, PH1, Pompano Beach, Florida 33062.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of diverse states and more than $75,000 is in controversy.

11.     Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this judicial district and resides in this district.

## FACTS

### A.  *Defendant's employment with The Hays Group*

12.     In 2009, The Hays Group hired Defendant as a General Lines Agent. She was hired to expand The Hays Group's book of business. Defendant worked at The Hays Group's Florida office, which is located at 1000 South Pine Island Road, Suite 225, Plantation, Florida 33324.

13.     On January 9, 2017, the Hays Group and Defendant executed a Confidentiality and Non-Solicitation Agreement, a true and correct copy of which is attached hereto as Exhibit A.

14.     The employment agreement contains a clause at § 7 that prohibits Defendant from soliciting The Hays Group's clients following the end of her employment with The Hays Group for a Restricted Period of 18 months:

7.     **Non-Solicitation Obligations**.

7.1     **Acknowledgement**.   The parties acknowledge that Employee will acquire substantial Confidential Information concerning the business of Company and the Company's customers as a result of his/her employment.  The parties further acknowledge that Employee will develop relationships and goodwill with Company's customers, and that Employee will be involved in the identification and furtherance of relationships and business opportunities with prospective customers, which involves a substantial investment of time and work.  The parties also recognize that the scope of business in which Company is engaged as of the execution of this Agreement is national and very competitive.  Employee recognizes that Employee's duties involve contact with the Company's actual and prospective customers in a way which provides Employee with, among other things, a personal hold on the goodwill of the Company's business. Employee's violation of Section 7 would therefore cause irreparable harm to the Company. Due

to the highly sensitive information and customer and prospective customer relationships Employee will acquire and form during the course of his/her employment with the Company, there is a substantial likelihood that competition by Employee with those customers and prospective customers after his/her employment ends would severely injure Company. Accordingly, the Company and Employee have agreed to certain provisions restricting Employee's post-employment activities as set forth below.

7.2     **Non-Solicitation Restrictions**.  During the Restricted Period, Employee shall not, directly or indirectly, solicit, divert, sell, service, interfere with, accept or otherwise attempt to convert any insurance or other business, products or services from or with respect to any Customer or Prospective Customer of the Company on behalf of a Competing Business.

15.     Further, § 5 prohibits Defendant from revealing any of The Hays Group's confidential information:

5.     **Non-Disclosure Obligations and Return of Company Property**.

5.1     **Acknowledgment**.  Employee acknowledges that as an employee of Company, Employee will have access to significant information relating to the business operations and finances of the Company or any business entity the Company may own or acquire, and that such access will include Confidential Information, Trade Secrets and Intellectual Property.

5.2     **Non-Disclosure**.  Employee will keep all Confidential Information, Trade Secrets and Intellectual Property confidential at all times and will not disclose, share, transfer, reveal or use any Confidential Information, Trade Secrets and Intellectual Property for any purpose whatsoever except as may be necessary or advisable in the ordinary course of the Company's business.  Such restriction, as it pertains to Confidential Information that does not qualify as a Trade Secret, shall apply for a period of three (3) years following Employee's employment with Company.   Trade Secret information shall be protected as long as the information at issue continues to qualify as a Trade Secret.  The Confidential Information, Trade Secrets and Intellectual Property shall remain the sole property of Company.   Employee acknowledges and understands that information covered under this Section 5 does not become

less confidential, proprietary or trade secret by virtue of Employee committing any of it to memory.

4

16.     Confidential information is defined by the agreement at § 1.2 as:

> 1.2     "Confidential Information" shall mean any information not generally known that Employee obtains concerning and/or relating to the Company, including, but not limited to, information concerning business processes, implementation methodologies, marketing, insurance programs, merchandising, business development, business operations, strategic planning, financial data, customer and prospective customer identity, customer and prospective customer
>
> lists, purchasing history, customer financial and demographic information, products and services offered, the design and structure of insurance programs offered or provided to customers, inventions, innovations, designs, ideas, plans, trade secrets, patents, intellectual property, proprietary information, computer/operating systems and software, packaging, advertising, distribution, sales methods and systems, sales and profit figures, know-how and any other proprietary information from Company, and any other non-public information or material related to the Company or any confidential information Company receives from third parties subject to a duty on Company's part to maintain the confidentiality of such information.  Confidential Information shall also include any work product created or compiled by Employee based on Company's Confidential Information including, without limitation, notebooks, files and other tangible products. Confidential Information does not include information lawfully acquired by a non-management employee (laborer) about wages, hours or other terms and conditions of employment when used for purposes protected by §7 of the National Labor Relations Act such as joining or forming a union, engaging in collective bargaining, or engaging in other concerted activity for mutual aid or protection of laborers. For purpose of clarity, it shall still be a violation of this Agreement for a non-management employee (laborer) to wrongfully compete by sharing Confidential Information with a competitor about other employees' compensation and benefits which was obtained through the course of employment with the Company for purposes of assisting such competitor in soliciting Company employees.

17.     In approximately 2014, during her work for The Hays Group, Defendant began to specialize in the sale of Dealer Open Lot ("DOL") policies to automobile dealers. DOL policies provide physical damage protection to a dealer's covered automobiles and equipment.

**B. *Defendant's scheme to manipulate insurance policies***

18.     The Hays Group recently discovered evidence that Defendant was manipulating the coverage amounts on insurance documents related to 26 insureds who had purchased DOL policies from her.

19.     In numerous instances, Defendant issued certificates of insurance to lenders and insureds containing inflated coverage amounts along with other fictitious information. In some

instances, she even created sham insurance policies and insurance proposals containing inflated coverage amounts that she presented to some insureds.

20. In September 2017, The Hays Group's staff discovered these discrepancies while Defendant was on vacation. Although the 26 dealerships are located outside of Florida, Defendant created these documents from her office computer at The Hays Group's Florida office, and the fictitious documents she created were sent to clients and lenders via email from her office in Plantation, Florida.

21. During the course of The Hays Group's internal investigation, it discovered numerous examples of Defendant's scheme to obtain an unfair business advantage by providing insureds with ostensibly higher coverage amounts at lower premiums, as outlined below.

22. The Hays Group was misled by Defendant's misrepresentations outlined below in that The Hays Group was led to believe that Defendant correctly represented to insured clients the amount of coverage provided by their applicable insurance carrier, rather than the inflated and fraudulent insurance coverage information that Defendant actually provided to insured clients. The Hays Group relied on these misrepresentations to its detriment, and eventually had to make its insureds whole following Defendant's termination, at great cost and after expending significant resources.

23. The clients of The Hays Group are identified by pseudonym below to preserve their confidentiality and The Hays Group's business interests in the confidentiality of its clients' identities.

   ### *i.  Client A*

24. Client A is located in the State of Texas.

25.     During its investigation, The Hays Group discovered that the policy for insured Client A with policy dates of 11/22/16-11/22/17 had been altered.

26.     For example, the policy was placed with Oklahoma Specialty Insurance Company for its Dealer Open Lot, weather and flood policy. The actual coverage amount was $20,000,000 for the Dealer Open Lot, and the Flood/Weather limit was $5,000,000.

27.     However, Defendant caused a certificate (titled "Evidence of Property Insurance") to be created for the lender, BB&T, showing that the Dealer Open Lot policy had a limit of $70,000,000.

28.     Indeed, on June 9, 2017, Defendant emailed to BB&T an Evidence of Property Insurance certificate that contained the falsely-inflated coverage limits.

29.     Moreover, Defendant also presented to the insured a proposal limit of $50,000,000 for Dealer Open Lot and $35,000,000 for Flood coverage when the original proposal provided to Defendant from others at The Hays Group had a limit of $20,000,000 for the Dealer Open Lot, and the Flood limit was $500,000.

30.     Additionally, Defendant caused a fictitious policy to be created for the insured showing Dealer Open Lot coverage of $50,000,000 with $35,000,000 for Flood coverage while the actual policy showed Dealer Open Lot coverage of $20,000,000 with Flood coverage of $5,000,000.

31.     With her June 9, 2017 act of wire fraud, Defendant misled both The Hays Group and Client A regarding the policy limit for Client A.

### ii. Client B

32.     Client B has three locations, all in the State of Texas.

33.     The Hays Group discovered that the policy for insured Client B with policy dates of 7/7/17-7/7/18 had been altered.

34.     For example, the actual Dealer Open Lot weather policy had a limit for Wind, Hail, and Flood of $750,000 per occurrence, Excess Wind, Hail, and Flood for $10,000,000 per occurrence, and Comprehensive and Collision for $1,000,000, but Defendant caused an Evidence of Property Insurance certificate to be created for the lender, BB&T, showing that the Dealer Open Lot policy had a limit of $105,000,000.

35.     On July 6, 2017, Defendant emailed to BB&T the certificate with the falsely-inflated coverage limit of $105,000,000.

36.     Defendant also created a proposal limit for the insured showing a Dealer Open Lot and Wind, Hail, Flood amount at $82,000,000 when the original proposal provided to Defendant from others at The Hays Group had a limit of $1,000,000 for the Dealer Open Lot, excluding weather and perils and $10,000,000 for Wind, Hail, and Flood.

37.     With her July 6, 2017 act of wire fraud, Defendant misled both The Hays Group and Client B regarding the policy limit for Client B.

>        *iii. Client C*

38.     Insured Client C has a coverage period of 7/1/17-7/1/18. Client C has nine locations, all in the State of Kansas.

39.     The actual Dealer Open Lot coverage amount for Client C with Lexington Insurance Company is $11,000,000. Additionally, Landmark Insurance Company covered the Flood, Wind, and Hail insurance at $750,000, with Excess Flood, Wind, and Hail coverage of $5,000,000. These limits were included on the original proposal that others at The Hays Group sent to Defendant.

40.     On July 5, 2017, Defendant, however, emailed an altered proposal to Client C with a copy to JPMorgan Chase Bank N.A., showing Flood, Wind, and Hail coverage of $1,000,000. She also altered the Excess limit for Flood, Wind, and Hail from $5,000,000 to $10,000,000.

41.     Further, on information and belief, Defendant caused an Evidence of Property Insurance certificate to be created for, and sent to, Client C and JPMorgan Chase N.A. showing a Dealer Open Lot policy limit of $46,000,000 on or about July 5, 2017.

42.     With her July 5, 2017 acts of wire fraud, Defendant misled both The Hays Group and Client C regarding the policy limit for Client C.

### iv. Client D

43.     Insured Client D has a coverage period of 7/24/17-7/24/18.

44.     Client D is located in the State of Texas.

45.     The actual Dealer Open Lot coverage amount for Client D, including weather but excluding flood, is $8,805,553.

46.     However, on or about September 18, 2017, Defendant caused an Evidence of Property Insurance certificate to be created for, and sent via email to, BB&T showing a Dealer Open Lot policy limit of $16,000,000.

47.     With her September 18, 2017 act of wire fraud, Defendant misled both The Hays Group and Client D regarding the policy limit for Client D.

### v. Client E

48.     Insured Client E has a coverage period of 8/23/17-8/23/18.

49.     Client E is located in the State of Louisiana.

50.     The actual Dealer Open Lot coverage amount for Client E, including weather but excluding flood, is $8,000,000.

51.     During the previous coverage period of 8/23/16-8/23/17, Defendant caused an Evidence of Property Insurance certificate to be created for the lender, Capital One, N.A., showing a Dealer Open Lot policy limit of $10,500,000.

52.     On January 13, 2017, Defendant emailed to Capital One, N.A. the certificate showing the falsely-inflated insurance limits.

53.     With her January 13, 2017 act of wire fraud, Defendant misled The Hays Group, Client E, and Capital One, N.A., regarding the policy limit for Client E.

### vi. Client F

54.     Insured Client F had an original policy term of 12/1/16-11/30/17. Client F is located in the State of Illinois.

55.     The actual Dealer Open Lot coverage amount for Client F including weather and flood with Lloyds of London is $5,000,000. The policy was rewritten with a term of 7/1/17-7/1/18, still with Lloyds of London for $5,000,000.

56.     But Defendant caused an Evidence of Property Insurance certificate to be created and emailed to the lender, Capital One, N.A., showing a Dealer Open Lot policy limit of $120,000,000 including weather and flood coverage.

57.     Defendant emailed the certificate to Client F on July 24, 2017.

58.     Defendant also caused a proposal to be created for the insured showing a Dealer Open Lot coverage amount including weather and flood at $110,000,000 when the original proposal provided to Defendant from others at The Hays Group had a coverage amount of $5,000,000. Defendant sent this altered proposal to Client F via email on November 30, 2016.

59.     With her July 24, 2017 and November 30, 2016 acts of wire fraud, Defendant misled The Hays Group, Client F, and Capital One, N.A., regarding the policy limit for Client F.

### vii. Client G

60.     Insured Client G has a coverage period of 4/1/17-4/1/18. Client G is located in the State of Texas.

61.     The actual Dealer Open Lot coverage amount including weather and flood for Client G with Lloyds of London is $5,000,000, but Defendant caused an Evidence of Property Insurance certificate to be created for the lender, BB&T, showing Dealer Open Lot policy limit of $40,000,000 including weather and flood coverage.

62.     Defendant emailed the certificate showing falsely inflated coverage limits to BB&T on June 23, 2017.

63.     Defendant also caused a policy to be created for the insured showing a Dealer Open Lot coverage amount including weather and flood at $42,000,000, when the original policy provided to Defendant from others at The Hays Group had a coverage amount of $5,000,000.

64.     Defendant emailed the policy with the falsely inflated coverage limits to BB&T on May 23, 2017.

65.     With her June 23, 2017 and May 23, 2017 acts of wire fraud, Defendant misled The Hays Group, Client G, and BB&T, regarding the policy limit for Client G.

### viii. Client H

66.     Insured Client H has a coverage period of 6/26/17-6/26/18. Client H is located in the State of Texas.

67.     The actual Dealer Open Lot coverage amount including weather without flood for Client H with Oklahoma Specialty Insurance Company is $15,000,000.

68.     Defendant, however, caused an Evidence of Property Insurance certificate to be created for, and emailed to, the lender, BB&T, showing a Dealer Open Lot policy limit of

$27,000,000 including weather and excluding flood coverage on June 27, 2017. Defendant was copied on that email.

69.     With her June 27, 2017 act of wire fraud, Defendant misled The Hays Group, Client H, and BB&T, regarding the policy limit for Client H.

### ix. Client I

70.     Insured Client I currently has a coverage period of 6/15/17-6/15/18. Client I has two locations in the State of Texas.

71.     During the coverage period of 6/15/15-6/15/16, Defendant caused an Evidence of Property Insurance certificate to be created for the lender, BB&T, showing a Dealer Open Lot policy limit of $27,500,000 including weather and flood coverage.

72.     Defendant sent the certificate to BB&T via email on June 12, 2015.

73.     But during that coverage period from 2015-2016, the actual Dealer Open Lot coverage amount including weather and flood with Oklahoma Specialty Insurance Company was $21,000,000.

74.     With her June 12, 2015 act of wire fraud, Defendant misled The Hays Group, Client I, and Capital One, N.A., regarding the policy limit for Client I.

### x. Client J

75.     Insured Client J has a coverage period of 5/1/17-5/1/18. Client J has two locations in the Commonwealth of Pennsylvania.

76.     The actual Dealer Open Lot coverage amount including weather and flood for Client J with Houston Specialty Insurance company is $7,000,000; the Flood coverage is only $5,350,000 due to the carrier's maximum per location.

77.     For this insured, on information and belief, Defendant caused two Evidence of Property Insurance certificates to be created for, and emailed to, the lenders, FNB Bank, N.A., and Swineford National Bank, showing Dealer Open Lot policy limits of $8,300,000, on April 26, 2017, with the exception of Flood coverage, which was shown with a limit of $5,000,000.

78.     Defendant was copied on the email to the insured containing the certificates with the falsely-inflated policy limits.

79.     With her April 26, 2017 act of wire fraud, Defendant misled The Hays Group, Client J, FNB Bank, N.A., and Swineford National Bank regarding the policy limit for Client J.

### xi. Client K

80.     Insured Client K had a coverage period of 12/15/16-12/15/17. Client K is located in the State of Texas.

81.     The actual Dealer Open Lot coverage amount including weather and flood for Client K with Lloyds of London is $2,500,000, with weather and flood limits also at $2,500,000.

82.     However, Defendant caused an Evidence of Property Insurance certificate to be created for the lender, BB&T, showing a Dealer Open Lot policy limit of $15,000,000 including weather and flood coverage.

83.     On December 14, 2016, Defendant emailed to the insured the certificate with the falsely-inflated coverage limits. In that same email Defendant confirmed that the certificate had also been emailed to the lender, BB&T.

84.     Additionally, Defendant created a fictitious proposal for the insured showing a Dealer Open Lot coverage amount including weather and flood at $9,800,000 when the actual proposal provided to Defendant from others at The Hays Group provided for coverage of

13

$2,500,000. Defendant emailed the fictitious proposal to the insured and lender on December 12, 2016.

85.     With her December 14, 2016 and December 12, 2016 acts of wire fraud, Defendant misled The Hays Group, Client K, and BB&T regarding the policy limit for Client K.

### xii. Client L

86.     Insured Client L had a coverage period of 10/30/16-10/30/17. Client L is located in the State of Texas.

87.     The actual Dealer Open Lot coverage amount including weather and flood for Client L with Lloyds of London is $6,250,000.

88.     On information and belief, Defendant caused an Evidence of Property Insurance certificate to be created for the lender showing a Dealer Open Lot policy limit of $6,500,000 including weather and flood coverage.

### xiii. Client M

89.     Insured Client M had a coverage period of 4/14/16-4/14/17. Client M is located in the State of Texas.

90.     The actual Dealer Open Lot coverage amount including weather and flood for Client M with Oklahoma Specialty Insurance Company was $8,000,000.

91.     On information and belief, however, Defendant caused an Evidence of Property Insurance certificate to be created for the lender, BB&T, showing a Dealer Open Lot policy limit of $13,000,000, including weather and flood coverage, and emailed that Evidence of Property Insurance certificate to the lender on or about April 14, 2016.

92.     With her April 14, 2016 act of wire fraud, Defendant misled The Hays Group, Client M, and BB&T regarding the policy limit for Client M.

### xiv. Client N

93.     Insured Client N had a coverage period of 12/11/16-12/11/17. Client N is located in the State of New Jersey.

94.     The actual Dealer Open Lot coverage amount including weather and flood with Lloyds of London is $18,750,000.

95.     On information and belief, however, Defendant caused an Evidence of Property Insurance certificate to be created for the lender, Capital One N.A., as Admin. Agent and/or Lender ISAOA, ATIMA, showing a Dealer Open Lot policy limit of $25,000,000 including weather and flood coverage.

### xv. Client O

96.     Insured Client O had a coverage period of 10/6/16-10/6/17. Client O has four locations in the State of Louisiana.

97.     The actual Dealer Open Lot coverage amount including weather and flood for Client O with Lloyds of London is $15,000,000.

98.     On information and belief, however, Defendant caused an Evidence of Property Insurance certificate to be created for, and sent by email to, Capital One, N.A., showing a Dealer Open Lot policy limit of $17,000,000 including weather and flood coverage on August 31, 2017. Defendant also caused that Evidence of Property Insurance certificate to be created for, and sent by email, to Toyota Financial Services on December 6, 2016. Defendant was copied on each email.

99.     With her August 31, 2017 and December 6, 2016 acts of wire fraud, Defendant misled The Hays Group, Client O, and Toyota Financial Services regarding the policy limit for Client O.

### xvi. Client P

100.    Insured Client P had a coverage period of 11/1/16-11/1/17. Client P is located in the State of Texas.

101.    The actual Dealer Open Lot coverage amount for Client P with Lloyds of London is $5,000,000, with an Excess Policy of $5,000,000 with Lloyds of London.

102.    However, Defendant caused a fictitious policy to be created showing an Excess policy limit with a total of approximately $80,000,000 for all of Client P's locations.

103.    Defendant emailed the policy with the falsely inflated limits to the lender, BB&T, on May 23, 2017.

104.    With her May 23, 2017 act of wire fraud, Defendant misled The Hays Group, Client P, and BB&T regarding the policy limit for Client P.

### xvii. Client Q

105.    Insured Client Q has a coverage period of 2/1/17-2/1/18. Client Q has three locations in the State of Texas.

106.    The actual Dealer Open Lot coverage amount including weather and flood for Client Q with Lloyds of London is $5,000,000.

107.    For this insured, Defendant caused an Evidence of Property Insurance certificate to be created for the lender, Nissan Motor Acceptance Corporation, showing a Dealer Open Lot policy limit of $11,058,716 including weather and flood coverage.

108.    Additionally, Defendant caused a fictitious proposal to be created for the insured showing a Dealer Open Lot coverage amount including weather and flood at $11,500,000 when the actual proposal provided to Defendant by others at The Hays Group showed the correct $5,000,000 coverage amount.

109.    Defendant emailed the fictitious proposal to Client Q on January 27, 2017.

110.     Also on January 27, 2017, Defendant emailed the correct proposal to a fictitious email address for the insured (rather than the insured's correct email address), with a copy to the Account Manager from The Hays Group.

111.     On information and belief, Defendant emailed the correct proposal to the fictitious email address to make it appear to the Account Manager and others at The Hays Group that she had emailed the correct proposal to the insured.

112.     With her January 27, 2017 acts of wire fraud, Defendant misled The Hays Group and Client Q regarding the policy limit for Client Q.

### xviii. Client R

113.     Insured Client R had a coverage period of 5/1/2015-5/1/2016. Client R is located in the State of Arkansas.

114.     The actual Dealer Open Lot coverage amount including weather and flood for Client R with Houston Specialty Insurance Company was $7,905,000, as it remains today.

115.     However, Defendant caused an Evidence of Property Insurance certificate to be created for the lender, BB&T, showing a Dealer Open Lot policy limit of $11,000,000 including weather and flood coverage.

116.     On April 30, 2015, Defendant emailed to BB&T the certificate showing falsely inflated coverage limits.

117.     With her April 30, 2015 act of wire fraud, Defendant misled The Hays Group, Client R, and BB&T regarding the policy limit for Client R.

### xix. Client S

118.     Insured Client S has a coverage period of 3/1/17-3/1/18. Client S is located in the State of Texas.

119.    While Defendant was negotiating the policy for Client S for 3/1/17-3/1/18, Defendant caused a fictitious proposal and policy to be created that showed a limit of $40,000,000 for Excess Wind & Hail rather than the actual proposal and policy limit of $4,000,000 for Excess Wind & Hail.

120.    Defendant emailed the policy containing the falsely inflated coverage limits to the insured on February 21, 2017.

121.    Defendant emailed the proposal containing the falsely inflated coverage limits to the insured on February 28, 2017.

122.    Additionally, Defendant caused an Evidence of Property Insurance certificate to be created for the lender, JPMorgan Chase Bank, N.A., showing a Dealer Open Lot policy limit of $44,000,000 with $1,000,000 for hail coverage when the actual Dealer Open Lot coverage amount including weather and flood with Lexington Insurance Company is $18,000,000.

123.    Defendant caused the certificate with the falsely-inflated coverage limits to be emailed to the lender on March 31, 2017 and Defendant was copied on that email.

124.    With her February 21, 2017, February 28, 2017, and March 31, 2017 acts of wire fraud, Defendant misled The Hays Group, Client S, and JP Morgan Chase Bank, N.A., regarding the policy limit for Client J.

### xx. Client T

125.    Insured Client T had a coverage period of 1/1/17-1/1/18 for two locations. Client T's locations are in the State of Texas.

126.    Additionally, for the coverage period of 1/1/17-1/1/18, Defendant caused two Evidence of Property Insurance certificates to be created for the lender, JPMorgan Chase Bank N.A., showing a total Dealer Open Lot policy limit for two locations of $18,000,000. The coverage

amount for one location was $8,000,000 while the other location showed a coverage amount of $10,000,000.

127.     But the actual Dealer Open Lot coverage amount, including weather and flood with Oklahoma Specialty Insurance Company, totaled just $14,200,000 ($7,100,000 for 2 locations).

128.     Defendant emailed the falsely-inflated $8,000,000 certificate to JPMorgan Chase on January 6, 2017.

129.     On information and belief, Defendant also emailed the falsely-inflated $10,000,000 certificate to JP Morgan Chase Bank on or about January 6, 2017.

130.     Defendant also altered a proposal for the Property, Garage, and Umbrella coverage as follows: Defendant removed the Flood and Quake exclusion, increased the Total Insurable Value from $7,165,000 to $8,490,000, removed the Wind and Hail deductible, altered the Garage Aggregate Limit from $2,000,000 to $3,000,000, added an additional individual under Owners, and altered the umbrella limit from $5,000,000 to $10,000,000. Defendant emailed this fictitious proposal to the insured on November 30, 2016.

131.     With her January 6, 2017 and November 30, 2016 acts of wire fraud, Defendant misled The Hays Group, Client T, and JP Morgan Chase Bank regarding the policy limit for Client T.

### xxi. Client U

132.     Insured Client U has a coverage period of 1/7/17-1/7/18. Client U is located in the State of Texas.

133.     The actual Dealer Open Lot coverage amount including weather and flood for Client U with Oklahoma Specialty Insurance Company was $13,600,000.

134.    But, on information and belief, Defendant caused an Evidence of Property Insurance certificate to be created for the lender showing a Dealer Open Lot policy limit totaling $22,000,000 including weather and flood coverage.

135.    On April 4, 2017, Defendant was copied on the email sending the certificate with the falsely-inflated policy limit to the lender, BB&T.

136.    With her April 4, 2017 act of wire fraud, Defendant misled The Hays Group, Client U, and BB&T regarding the policy limit for Client U.

### xxii. Client V

137.    Insured Client V had a coverage period of 7/6/16-7/6/17. Client V is located in the State of Texas.

138.    The actual Dealer Open Lot coverage amount excluding Weather for Client V was $12,000,000 through Lexington. Other policies included Primary Wind and Hail of $1,000,000 through Maxum Indemnity and Excess Wind and Hail of $1,000,000 through Lloyds of London.

139.    However, Defendant caused an Evidence of Property Insurance certificate to be created for the lender showing a Dealer Open Lot policy limit totaling $12,950,000 including weather and flood coverage for this insured.

140.    On July 13, 2016, Defendant emailed the certificate containing the falsely-inflated policy limit to the lender, JPMorgan Chase Bank.

141.    With her July 13, 2016 act of wire fraud, Defendant misled The Hays Group, Client V, and JP Morgan Chase Bank regarding the policy limit for Client V.

### xxiii. Client W

142.    Insured Client W had a coverage period of 9/17/16-9/17/17. Client W is located in the State of Texas.

143. Although the actual Dealer Open Lot coverage amount including weather and flood for Client W with Lloyds of London was $9,000,000, on information and belief, Defendant caused an Evidence of Property Insurance certificate to be created showing a Dealer Open Lot policy limit totaling $18,674,000 including weather and flood coverage.

### xxiv. Client X

144. Insured Client X has a coverage period of 2/27/17-2/27/18. Client X has three locations in the Commonwealth of Pennsylvania.

145. Although the actual Dealer Open Lot coverage amount including weather and flood for Client X with Houston Specialty Insurance Company is $16,500,000, on information and belief, Defendant caused an Evidence of Property Insurance certificate to be created showing a Dealer Open Lot policy limit of $18,125,000 including weather and flood coverage. Defendant caused that Evidence of Property Insurance certificate to be emailed to the lender Capital One, N.A., on May 9, 2017.

146. With her May 9, 2017 act of wire fraud, Defendant misled The Hays Group, Client X, and Capital One, N.A., regarding the policy limit for Client X.

### xxv. Client Y

147. Insured Client Y had a coverage period of 7/1/17-7/1/18. Client Y has two locations in the State of Louisiana.

148. Although the actual Dealer Open Lot coverage amount including weather and excluding flood with Houston Specialty Insurance Company was $7,100,000 and $1,000,000 respectively, on information and belief, Defendant caused an Evidence of Property Insurance certificate to be created showing a Dealer Open Lot policy limit of $8,125,000.

149.    Defendant emailed the certificate with the falsely-inflated limit to the lender, Capital One, N.A., on September 22, 2016.

150.    With her September 22, 2016 acts of wire fraud, Defendant misled The Hays Group, Client Y, and Capital One, N.A., regarding the policy limit for Client Y.

### xxvi. Client Z

151.    Insured Client Z had a coverage period of 10/26/16-10/26/17. Client Z has four locations in the State of New Mexico.

152.    Although the actual Dealer Open Lot coverage amount including weather and flood with Atain Insurance Company was $5,000,000, Defendant caused an Evidence of Property Insurance certificate to be created for the lender, JPMorgan Chase Bank, N.A., showing a Dealer Open Lot policy limit of $31,375,000.

153.    Defendant caused the certificate with the falsely-inflated limit to be emailed to JPMorgan Chase Bank, N.A., on October 27, 2016.

154.    In addition to that certificate, Defendant also emailed an inflated Property and Umbrella proposal for the insured's June 30, 2017 renewal. Defendant inflated the business income on the proposal from $2,500,000 to $6,500,000 and the umbrella limit from $5,000,000 to $10,000,000. Defendant emailed this proposal to the insured on June 26, 2017.

155.    With her January 6, 2017 and November 30, 2016 acts of wire fraud, Defendant misled The Hays Group, Client T, and JP Morgan Chase Bank regarding the policy limit for Client T.

### C.  The Hays Group's work to right the wrongs done by Defendant

156.    Upon learning of Defendant's actions, The Hays Group promptly alerted each of the impacted insureds.

157.    On September 29, 2017, The Hays Group terminated Defendant's employment.

158.    Since discovering these actions by Defendant, The Hays Group has expended extensive resources in terms of both time and money to resolve this issue to the satisfaction of each insured. The Hays Group has worked extensively to revise the certificates of insurance on the affected policies. It has also absorbed many of the costs to revise coverage on numerous policies, in excess of $515,000.

159.    Further, Defendant's actions exposed The Hays Group to significant legal liability.

160.    The Hays Group has also informed the appropriate officials about Defendant's actions. On or about October 17, 2017, The Hays Group met with members of Florida's Department of Financial Services' senior management team to assist in an investigation of Defendant.

### D. Defendant's employment with a competing firm

161.    In late November of 2017, The Hays Group learned that Defendant is, on information and belief, now employed by Independent Finance Associates, a competing firm located at 299 Camino Gardens Boulevard, Suite 203, Boca Raton, Florida 33432.

162.    On information and belief and in violation of Defendant's employment agreement with The Hays Group, Defendant has shared with her new employer The Hays Group's confidential information, such as clients' identities and contact information.

163.    On information and belief, Defendant solicited business from these clients of The Hays Group in direct contravention of Defendant's employment agreement with The Hays Group.

164.    Indeed, since learning of Defendant's new employment with a competing firm, several clients of The Hays Group with whom Defendant worked when employed there have

contacted The Hays Group to request information to transfer their accounts, which has resulted in damage to The Hays Group, including:

     a.  Oasis Gin;

     b.  Lone Star Cleburne;

     c.  J. Murray Motors;

     d.  Phil Wright Autoplex;

     e.  Tarbell Automotive;

     f.  Em Sil Enterprises;

     g.  Bella Automotive Group;

     h.  Excell Auto Group;

     i.  West Gaines Seed; and

     j.  Broward Motor Sports.

**COUNT I**
**VIOLATION OF THE RACKETEER INFLUENCED CORRUPT**
**ORGANIZATIONS ("RICO") ACT, 18 U.S.C. § 1964(c)**

165.    The Hays Group restates and realleges all of the preceding paragraphs of this Complaint as though set forth in full at this place.

166.    The Hays Group is an "enterprise" under 18 U.S.C. § 1961(4).

167.    The Hays Group is engaged in, and its activities affect, interstate commerce by way of the provision of insurance services and products to its clients throughout the United States.

168.    Defendant is a "person" under 18 U.S.C. § 1961(3).

169.    Defendant was employed by The Hays Group from approximately 2009 to 2017.

170.    Defendant operated, managed, and conducted The Hays Group's affairs through a pattern of racketeering activity.

171.   Pursuant to and in furtherance of her fraudulent scheme, Defendant committed multiple related predicate acts of wire fraud (18 U.S.C. § 1343), including but not limited to:

| Insured | Location | Date | Instrumentality | Fraudulent Statements |
|---------|----------|------|-----------------|-----------------------|
| Client A | Texas | 6/9/2017 | Email | Dealer Open Lot policy coverage limit of $70,000,000. |
| Client B | Texas | 7/6/2017 | Email | Dealer Open Lot policy coverage limit of $105,000,000. |
| Client C | Kansas | 7/5/17 | Email | Flood, Wind, and Hail insurance proposal coverage limit of $1,000,000; Excess limit for Flood, Wind, and Hail of $10,000,000. |
| Client C | Kansas | 7/5/17 | Email | Dealer Open Lot policy coverage limit of $46,000,000. |
| Client D | Texas | 9/18/17 | Email | Dealer Open Lot policy coverage limit of $16,000,000. |
| Client E | Louisiana | 1/13/17 | Email | Dealer Open Lot policy coverage limit of $10,500,000. |
| Client F | Illinois | 7/24/17 | Email | Dealer Open Lot policy coverage limit of $120,000,000. |
| Client F | Illinois | 11/30/16 | Email | Dealer Open Lot proposal coverage limit of $110,000,000. |
| Client G | Texas | 6/23/17 | Email | Dealer Open Lot policy coverage limit of $40,000,000. |
| Client G | Texas | 5/23/2017 | Email | Dealer Open Lot policy coverage limit of $42,000,000. |
| Client H | Texas | 6/27/2017 | Email | Dealer Open Lot policy coverage limit of $27,000,000. |
| Client I | Texas | 6/12/15 | Email | Dealer Open Lot policy coverage limit of $27,500,000. |
| Client J | Pennsylvania | 4/26/17 | Email | Dealer Open Lot policy coverage limits of $8,300,000. |
| Client K | Texas | 12/14/16 | Email | Dealer Open Lot policy coverage limit of $15,000,000. |
| Client K | Texas | 12/12/16 | Email | Dealer Open Lot proposal coverage limit of $9,800,000. |
| Client M | Texas | 4/16/16 | Email | Dealer Open Lot policy coverage limit of $13,000,000. |
| Client O | Louisiana | 8/31/17 | Email | Dealer Open Lot policy coverage limit of $17,000,000. |

| Client O | Louisiana | 12/6/16 | Email | Dealer Open Lot policy coverage limit of $17,000,000. |
|---|---|---|---|---|
| Client P | Texas | 5/23/17 | Email | Dealer Open Lot policy coverage limit of $80,000,000. |
| Client Q | Texas | 1/27/17 | Email | Dealer Open Lot policy coverage limit of $11,058,716. |
| Client Q | Texas | 1/27/17 | Email | Dealer Open Lot proposal coverage limit of $11,500,000. |
| Client R | Arkansas | 4/30/15 | Email | Dealer Open Lot policy coverage limit of $11,000,000. |
| Client S | Texas | 2/21/17 | Email | Dealer Open Lot policy coverage limit of $40,000,000. |
| Client S | Texas | 2/28/17 | Email | Dealer Open Lot proposal coverage limit of $40,000,000 |
| Client S | Texas | 3/31/17 | Email | Dealer Open Lot policy coverage limit of $44,000,000 with $1,000,000 for hail coverage. |
| Client T | Texas | 1/6/2017 | Email | Dealer Open Lot policy coverage limit of $8,000,000. |
| Client T | Texas | 1/6/2017 | Email | Dealer Open Lot policy coverage limit of $10,000,000. |
| Client U | Texas | 4/4/17 | Email | Dealer Open Lot policy coverage limit of $22,000,000. |
| Client V | Texas | 7/13/16 | Email | Dealer Open Lot policy coverage limit of $12,950,000 including weather and flood coverage. |
| Client X | Pennsylvania | 5/9/17 | Email | Dealer Open Lot policy coverage limit of $18,125,000. |
| Client Y | Louisiana | 9/22/16 | Email | Dealer Open Lot policy coverage limit of $8,125,000. |
| Client Z | New Mexico | 6/26/17 | Email | Proposal with business income of $6,500,000 and umbrella limit of $10,000,000. |
| Client Z | New Mexico | 10/27/16 | Email | Dealer Open Lot policy coverage limit of $31,375,000. |

172.    Through the acts set forth above, Defendant engaged in interstate commerce by using the internet to engage in fraudulent communications with lenders and insureds outside of the State of Florida where she was located. *United States v. Walters*, 182 F. App'x 944, 945 (11th Cir. 2006).

173.     The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5). The acts of wire fraud set forth above demonstrate a continuous relationship between repeated acts relating to the racketeering activity conducted by Defendant, for the same purpose, over a several-years-long period. These predicate acts targeted at least 26 different clients of The Hays Group over a period lasting from April 2015 to September 2017—nearly two-and-a-half years.

174.     Further, on information and belief, Defendant continues to be employed in the insurance industry. She engaged in this pattern of racketeering activity up until The Hays Group terminated her in September 2017. Her fraudulent business practices continue, on information and belief, as she works in the industry.

175.     Defendant has directly and indirectly conducted and participated in the conduct of The Hays Group's affairs through a pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

176.     The Hays Group was misled by the "Fraudulent Statements" outlined in the chart above as The Hays Group relied on Defendant's representations to it that she correctly advised the insured clients of the amount of insurance coverage they actually received from their applicable insurance carriers. Defendant altered documents to mislead The Hays Group and its clients regarding the policy limits for each client so that the clients involved believed that they were receiving higher coverage amounts than they, in fact, were. The Hays Group and its clients were misled into believing the premium payment amount was commensurate with the coverage received, when in reality the premiums did not cover the inflated and fraudulent insurance limits misrepresented by Defendant. Accordingly, The Hays Group was misled by Defendant into believing that the clients received the proposed coverage amounts as actually provided by their

applicable insurance carriers, when, in fact, the clients were provided inflated and fraudulent insurance coverage information by Defendant.

177.    As a direct and proximate result of Defendant's racketeering activities and violations of 18 U.S.C. § 1962(c), The Hays Group has been injured in an amount exceeding $75,000 in its business and property in that The Hays Group has expended, among other things, extensive resources—both time and money—to resolve this issue to the satisfaction of each insured. For example, The Hays Group has also worked extensively to revise the certificates of insurance on the affected policies, absorbed many of the costs to revise coverage on numerous policies, and made its insureds whole, totaling more than $515,000 in damages to date incurred to correct Defendant's fraud. The Hays Group is informed and believes that it also lost clients who learned that their policy coverage limits were much lower than they were told by Defendant. Further, Defendant's actions exposed The Hays Group to significant legal liability.

**COUNT II**
**CIVIL THEFT IN VIOLATION OF THE CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, Fla. Stat. § 772 *et seq.* (2012)**

178.    The Hays Group restates and realleges all of the preceding paragraphs of this Complaint as though set forth in full at this place.

179.    The Hays Group is an "enterprise" under Fla. Stat. § 772.102(3).

180.    Defendant was employed by The Hays Group from approximately 2009 to 2017.

181.    Defendant operated, managed, and conducted The Hays Group's affairs through a pattern of racketeering activity.

182.    Pursuant to and in furtherance of her fraudulent scheme, Defendant committed multiple related predicate acts, including but not limited to:

| Insured | Location | Date | Instrumentality | Fraudulent Statements |
|---------|----------|------|-----------------|-----------------------|
| Client A | Texas | 6/9/2017 | Email | Dealer Open Lot policy coverage limit of $70,000,000. |
| Client B | Texas | 7/6/2017 | Email | Dealer Open Lot policy coverage limit of $105,000,000. |
| Client C | Kansas | 7/5/17 | Email | Flood, Wind, and Hail insurance proposal coverage limit of $1,000,000; Excess limit for Flood, Wind, and Hail of $10,000,000. |
| Client C | Kansas | 7/5/17 | Email | Dealer Open Lot policy coverage limit of $46,000,000. |
| Client D | Texas | 9/18/17 | Email | Dealer Open Lot policy coverage limit of $16,000,000. |
| Client E | Louisiana | 1/13/17 | Email | Dealer Open Lot policy coverage limit of $10,500,000. |
| Client F | Illinois | 7/24/17 | Email | Dealer Open Lot policy coverage limit of $120,000,000. |
| Client F | Illinois | 11/30/16 | Email | Dealer Open Lot proposal coverage limit of $110,000,000. |
| Client G | Texas | 6/23/17 | Email | Dealer Open Lot policy coverage limit of $40,000,000. |
| Client G | Texas | 5/23/2017 | Email | Dealer Open Lot policy coverage limit of $42,000,000. |
| Client H | Texas | 6/27/2017 | Email | Dealer Open Lot policy coverage limit of $27,000,000. |
| Client I | Texas | 6/12/15 | Email | Dealer Open Lot policy coverage limit of $27,500,000. |
| Client J | Pennsylvania | 4/26/17 | Email | Dealer Open Lot policy coverage limits of $8,300,000. |
| Client K | Texas | 12/14/16 | Email | Dealer Open Lot policy coverage limit of $15,000,000. |
| Client K | Texas | 12/12/16 | Email | Dealer Open Lot proposal coverage limit of $9,800,000. |
| Client M | Texas | 4/16/16 | Email | Dealer Open Lot policy coverage limit of $13,000,000. |
| Client O | Louisiana | 8/31/17 | Email | Dealer Open Lot policy coverage limit of $17,000,000. |
| Client O | Louisiana | 12/6/16 | Email | Dealer Open Lot policy coverage limit of $17,000,000. |
| Client P | Texas | 5/23/17 | Email | Dealer Open Lot policy coverage limit of $80,000,000. |

| Client Q | Texas | 1/27/17 | Email | Dealer Open Lot policy coverage limit of $11,058,716. |
| Client Q | Texas | 1/27/17 | Email | Dealer Open Lot proposal coverage limit of $11,500,000. |
| Client R | Arkansas | 4/30/15 | Email | Dealer Open Lot policy coverage limit of $11,000,000. |
| Client S | Texas | 2/21/17 | Email | Dealer Open Lot policy coverage limit of $40,000,000. |
| Client S | Texas | 2/28/17 | Email | Dealer Open Lot proposal coverage limit of $40,000,000 |
| Client S | Texas | 3/31/17 | Email | Dealer Open Lot policy coverage limit of $44,000,000 with $1,000,000 for hail coverage. |
| Client T | Texas | 1/6/2017 | Email | Dealer Open Lot policy coverage limit of $8,000,000. |
| Client T | Texas | 1/6/2017 | Email | Dealer Open Lot policy coverage limit of $10,000,000. |
| Client U | Texas | 4/4/17 | Email | Dealer Open Lot policy coverage limit of $22,000,000. |
| Client V | Texas | 7/13/16 | Email | Dealer Open Lot policy coverage limit of $12,950,000 including weather and flood coverage. |
| Client X | Pennsylvania | 5/9/17 | Email | Dealer Open Lot policy coverage limit of $18,125,000. |
| Client Y | Louisiana | 9/22/16 | Email | Dealer Open Lot policy coverage limit of $8,125,000. |
| Client Z | New Mexico | 6/26/17 | Email | Proposal with business income of $6,500,000 and umbrella limit of $10,000,000. |
| Client Z | New Mexico | 10/27/16 | Email | Dealer Open Lot policy coverage limit of $31,375,000. |

183.     The acts set forth above constitute a pattern of racketeering activity pursuant to Fla.

Stat. § 772.103 (2012). The acts of wire fraud set forth above demonstrate a continuous relationship

between repeated acts relating to the racketeering activity conducted by Defendant, for the same

purpose, over a several-years-long period.

184.     Defendant has directly and indirectly conducted and participated in the conduct of

The Hays Group's affairs through a pattern of racketeering and activity described above.

185.     Defendant illegally obtained commissions paid to her by The Hays Group, which she would not have received but for her fraudulent activities.

186.     As a direct and proximate result of Defendant's racketeering activities, The Hays Group has been injured in an amount exceeding $75,000 in its business and property, including $186,579 in commissions paid to Defendant that were illegally obtained by Defendant as a result of her fraudulent activities.

## COUNT III
## VIOLATION OF THE FLORIDA RICO (RACKETEER INFLUENCED AND CORRUPT ORGANIZATION) ACT, Fla. Stat. § 895 *et seq.* (2009)

187.     The Hays Group restates and realleges all of the preceding paragraphs of this Complaint as though set forth in full at this place.

188.     The Hays Group is an "enterprise" under Fla. Stat. § 895.02(3).

189.     Defendant was employed by The Hays Group from approximately 2009 to 2017.

190.     Defendant operated, managed, and conducted The Hays Group's affairs through a "pattern of racketeering activity" as defined by Fla. Stat. § 895.02(4).

191.     Pursuant to and in furtherance of her fraudulent scheme, Defendant committed multiple related predicate acts of fraud in violation of Fla. Stat. § 817 *et seq*. and 18 U.S.C. § 1961(1), including but not limited to:

| Insured | Location | Date | Instrumentality | Fraudulent Statements |
|---------|----------|------|-----------------|------------------------|
| Client A | Texas | 6/9/2017 | Email | Dealer Open Lot policy coverage limit of $70,000,000. |
| Client B | Texas | 7/6/2017 | Email | Dealer Open Lot policy coverage limit of $105,000,000. |
| Client C | Kansas | 7/5/17 | Email | Flood, Wind, and Hail insurance proposal coverage limit of $1,000,000; Excess limit for Flood, Wind, and Hail of $10,000,000. |

| Client C | Kansas | 7/5/17 | Email | Dealer Open Lot policy coverage limit of $46,000,000. |
|---|---|---|---|---|
| Client D | Texas | 9/18/17 | Email | Dealer Open Lot policy coverage limit of $16,000,000. |
| Client E | Louisiana | 1/13/17 | Email | Dealer Open Lot policy coverage limit of $10,500,000. |
| Client F | Illinois | 7/24/17 | Email | Dealer Open Lot policy coverage limit of $120,000,000. |
| Client F | Illinois | 11/30/16 | Email | Dealer Open Lot proposal coverage limit of $110,000,000. |
| Client G | Texas | 6/23/17 | Email | Dealer Open Lot policy coverage limit of $40,000,000. |
| Client G | Texas | 5/23/2017 | Email | Dealer Open Lot policy coverage limit of $42,000,000. |
| Client H | Texas | 6/27/2017 | Email | Dealer Open Lot policy coverage limit of $27,000,000. |
| Client I | Texas | 6/12/15 | Email | Dealer Open Lot policy coverage limit of $27,500,000. |
| Client J | Pennsylvania | 4/26/17 | Email | Dealer Open Lot policy coverage limits of $8,300,000. |
| Client K | Texas | 12/14/16 | Email | Dealer Open Lot policy coverage limit of $15,000,000. |
| Client K | Texas | 12/12/16 | Email | Dealer Open Lot proposal coverage limit of $9,800,000. |
| Client M | Texas | 4/16/16 | Email | Dealer Open Lot policy coverage limit of $13,000,000. |
| Client O | Louisiana | 8/31/17 | Email | Dealer Open Lot policy coverage limit of $17,000,000. |
| Client O | Louisiana | 12/6/16 | Email | Dealer Open Lot policy coverage limit of $17,000,000. |
| Client P | Texas | 5/23/17 | Email | Dealer Open Lot policy coverage limit of $80,000,000. |
| Client Q | Texas | 1/27/17 | Email | Dealer Open Lot policy coverage limit of $11,058,716. |
| Client Q | Texas | 1/27/17 | Email | Dealer Open Lot proposal coverage limit of $11,500,000. |
| Client R | Arkansas | 4/30/15 | Email | Dealer Open Lot policy coverage limit of $11,000,000. |
| Client S | Texas | 2/21/17 | Email | Dealer Open Lot policy coverage limit of $40,000,000. |
| Client S | Texas | 2/28/17 | Email | Dealer Open Lot proposal coverage limit of $40,000,000 |

| Client S | Texas | 3/31/17 | Email | Dealer Open Lot policy coverage limit of $44,000,000 with $1,000,000 for hail coverage. |
| Client T | Texas | 1/6/2017 | Email | Dealer Open Lot policy coverage limit of $8,000,000. |
| Client T | Texas | 1/6/2017 | Email | Dealer Open Lot policy coverage limit of $10,000,000. |
| Client U | Texas | 4/4/17 | Email | Dealer Open Lot policy coverage limit of $22,000,000. |
| Client V | Texas | 7/13/16 | Email | Dealer Open Lot policy coverage limit of $12,950,000 including weather and flood coverage. |
| Client X | Pennsylvania | 5/9/17 | Email | Dealer Open Lot policy coverage limit of $18,125,000. |
| Client Y | Louisiana | 9/22/16 | Email | Dealer Open Lot policy coverage limit of $8,125,000. |
| Client Z | New Mexico | 6/26/17 | Email | Proposal with business income of $6,500,000 and umbrella limit of $10,000,000. |
| Client Z | New Mexico | 10/27/16 | Email | Dealer Open Lot policy coverage limit of $31,375,000. |

192.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5). The acts of wire fraud set forth above demonstrate a continuous relationship between repeated acts relating to the racketeering activity conducted by Defendant, for the same purpose, over a several-years-long period. These predicate acts targeted at least 26 different clients of The Hays Group over a period lasting from April 2015 to September 2017—nearly two-and-a-half years.

193.    Further, on information and belief, Defendant continues to be employed in the insurance industry. She engaged in this pattern of racketeering activity up until The Hays Group terminated her in September 2017. Her fraudulent business practices continue, on information and belief, as she works in the industry.

194.     Defendant has directly and indirectly conducted and participated in the conduct of The Hays Group's affairs through a pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

195.     The Hays Group was misled by the "Fraudulent Statements" outlined in the chart above as The Hays Group relied on Defendant's representations to it that she correctly advised the insured clients of the amount of insurance coverage they actually received from their applicable insurance carriers. Defendant altered documents to mislead The Hays Group and its clients regarding the policy limits for each client so that the clients involved believed that they were receiving higher coverage amounts than they, in fact, were. The Hays Group and its clients were misled into believing the premium payment amount was commensurate with the coverage received, when in reality the premiums did not cover the inflated and fraudulent insurance limits misrepresented by Defendant. Accordingly, The Hays Group was misled by Defendant into believing that the clients received the proposed coverage amounts as actually provided by their applicable insurance carriers, when, in fact, the clients were provided inflated and fraudulent insurance coverage information by Defendant.

196.     As a direct and proximate result of Defendant's racketeering activities and violations of 18 U.S.C. § 1962(c), The Hays Group has been injured in an amount exceeding $75,000 in its business and property in that The Hays Group has expended, among other things, extensive resources—both time and money—to resolve this issue to the satisfaction of each insured. For example, The Hays Group has also worked extensively to revise the certificates of insurance on the affected policies, absorbed many of the costs to revise coverage on numerous policies, and made its insureds whole, totaling more than $515,000 in damages incurred to date to correct Defendant's fraud. The Hays Group is informed and believes that it also lost clients who

learned that their policy coverage limits were much lower than they were told by Defendant. Further, Defendant's actions exposed The Hays Group to significant legal liability.

## COUNT IV
## BREACH OF CONTRACT

197.    The Hays Group restates and realleges all of the preceding paragraphs of this Complaint as though set forth in full at this place.

198.    The Hays Group and Defendant agreed by way of a January 9, 2017 written agreement that Defendant would not solicit clients of The Hays Group for a period of 18 months following the termination of her employment with The Hays Group.

199.    The Hays Group and Defendant also agreed in that January 9, 2017 agreement that Defendant would not disclose The Hays Group's confidential information for a period of three years following the termination of her employment.

200.    This restrictive covenant is justified by The Hays Group's legitimate business interests, including its valuable confidential business information, its substantial relationships with existing clients, and client goodwill associates with its ongoing business practice in the specialized area of insurance.

201.    The restrictive covenants included in Defendant's agreement with The Hays Group, including the confidentiality and non-solicitation clauses, are reasonably necessary to protect The Hays Group's legitimate business interests.

202.    During her new employment with Independent Finance Associates, Defendant has solicited The Hays Group's clients in violation of her agreement.

203.    During her new employment with Independent Finance Associates, Defendant has disclosed and misappropriated The Hays Group's confidential information in violation of her agreement.

204. Indeed, clients of The Hays Group for which Defendant provided services that have left The Hays Group following Defendant's termination as a result of Defendant's solicitation include:

    a. Oasis Gin;

    b. Lone Star Cleburne;

    c. J. Murray Motors;

    d. Phil Wright Autoplex;

    e. Tarbell Automotive;

    f. Em Sil Enterprises;

    g. Bella Automotive Group;

    h. Excell Auto Group;

    i. West Gaines Seed; and

    j. Broward Motor Sports.

205. These acts constitute a breach of Defendant's contract with The Hays Group.

206. The Hays Group has been harmed by Defendant's solicitation of its clients and misappropriation of its confidential information in an amount in excess of $270,000 for the year 2018, and additional damages for subsequent years, to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, The Hays Group respectfully requests that this Court enter judgment against Defendant as follows:

    1. A temporary restraining order and preliminary injunction that contains the following:

        a. Defendant is enjoined and restrained from:

      i.   Misappropriating and use of The Hays Group's confidential and/or trade secret information, including but not limited to its client's identities;

     ii.   Soliciting The Hays Group's clients.

2. An award requiring Defendant to pay actual damages in an amount to be determined at trial.

3. An award of The Hays Group's attorneys' fees pursuant to 18 U.S.C. § 1964(c).

4. An award of treble damages pursuant to 18 U.S.C. § 1964(c).

5. An award of The Hays Group's attorneys' fees pursuant to Fla. Stat. § 772.104(a) (2012).

6. An award of treble damages pursuant to Fla. Stat. § 772.104(a) (2012).

7. An award of attorneys' fees pursuant to Fla. Stat. § 542.335(1)(k).

8. Any and all further and appropriate relief that the Court deems just and equitable under the circumstances.

Dated: May 3, 2018                    Respectfully Submitted,

                                      /s/ Adam M. Schachter
                                      DANIEL S. GELBER
                                      Florida Bar No. 512877
                                      dan@gsgpa.com
                                      ADAM M. SCHACHTER
                                      Florida Bar No. 647101
                                      aschachter@gsgpa.com
                                      GERALD E. GREENBERG
                                      Florida Bar No. 440094
                                      ggreenberg@gsgpa.com
                                      GELBER SCHACHTER & GREENBERG, P.A.
                                      1221 Brickell Avenue, Suite 2010
                                      Miami, Florida 33131
                                      Telephone: (305) 728-0950
                                      Facsimile: (305) 728-0951
                                      E-service: efilings@gsgpa.com

                                      and

                                      CHRISTOPHER W. MADEL *(pro hac)*
                                      Minnesota Bar No. 230297
                                      cmadel@madellaw.com
                                      JENNIFER M. ROBBINS *(pro hac)*
                                      Minnesota Bar No. 0387745
                                      jrobbins@madellaw.com
                                      CASSANDRA B. MERRICK *(pro hac)*
                                      Minnesota Bar No. 396372
                                      cmerrick@madellaw.com
                                      MADEL PA
                                      800 Pence Building
                                      800 Hennepin Avenue
                                      Minneapolis, MN  55403
                                      Telephone: 612-605-0630
                                      Fax: 612-326-9990

                                      *Attorneys for Plaintiff The Hays Group, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of May 2018 a true and correct copy of the foregoing is being electronically filed with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served this date on all counsel of record or pro se parties listed below, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

## SERVICE LIST

Leonard K. Samuels
lsamuels@bergersingerman.com
Caitlin M. Trowbridge
ctrowbridge@bergersingerman.com
Berger Singerman LLP
350 East Las Olas Blvd., Suite 1000
Ft. Lauderdale, FL 33301
Tele: 954-525-9900
Fax: 954-523-2872
drt@bergersingerman.com
vbarthelemy@bergersingerman.com
drt@bergersingerman.com
mnewland@bergersingerman.com

*Attorneys for Defendant*

/s/ Adam M. Schachter
ADAM M. SCHACHTER