UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-20726-UU

THE HAYS GROUP, INC.,

    Plaintiff,

v.

DEBORAH AICHELE,

    Defendant.
_____/

## ORDER

THIS CAUSE came before the Court on Defendant's Motion to Dismiss (D.E. 26).

THE COURT has considered the motion and the pertinent portions of the record and is otherwise fully advised in the premises.

For the reasons set forth below the motion is granted in part and denied in part. Because Plaintiff's RICO and breach of contract claims fail for inadequate pleading, the Court will grant Plaintiff one chance to replead. Plaintiff shall file a second amended complaint no later than Friday, July 13, 2018.

## BACKGROUND

The facts recited here come from the amended complaint (D.E. 21).

Plaintiff, The Hays Group, is a Minnesota insurance brokerage corporation. *Id*. ¶¶ 6, 7. Defendant, Deborah Aichele, is a Florida resident and former employee of Plaintiff's. *Id*. ¶¶ 8, 12. Defendant started working for Plaintiff in 2009. *Id*. ¶ 12. She specialized in selling Dealer Open Lot ("DOL") policies to automobile dealers. *Id*. ¶ 17.

I.     **Defendant Allegedly Creates False Policies and Inflates Coverage**

In 2017, Plaintiff discovered that Defendant was issuing insurance certificates with inflated coverage amounts. *Id*. ¶¶ 19–20. Plaintiff also discovered that Defendant had created fake insurance policies that she presented to some insureds. *Id*. Plaintiff provides examples of 26 clients (identified with pseudonyms) for whom Defendant allegedly created fake policies or inflated coverage. The Court describes a few of them here, but it is not necessary to describe all 26.

   1. Client A

Client A purchased a $20 million DOL policy, with a flood limit of $5 million. *Id*. ¶ 26. Defendant, however, created a certificate of insurance showing that the policy coverage was $70 million. *Id*. ¶¶ 27, 28. She then emailed that certificate to the lender, BB&T. *Id*. Meanwhile, she created a policy for the insured showing $50 million in DOL coverage with $35 million for flood coverage. *Id*. ¶ 30.

   2. Client B

Client B purchased a DOL policy with $750,000 in per-occurrence flood and weather coverage. *Id*. ¶ 34. The policy included excess flood and weather coverage of $10 million per occurrence, and comprehensive and collision coverage of $1million. *Id*. Defendant, however, created a certificate showing that the policy had a total limit of $105 million and emailed it to the lender. *Id.* ¶ 35. Meanwhile she created a proposal for the insured showing $82 million in total DOL coverage. *Id*. ¶ 36. Plaintiff makes similar allegations with respect to the other 24 clients. *See id.* ¶¶ 38–155.

On September 29, 2017, after Plaintiff found out about these false policies and inflated coverage amounts, it terminated Defendant's employment. *Id*. ¶ 157. It also expended time and

money to resolve these issues for the insureds, and incurred more than $515,000 in costs to revise coverage on the policies. *Id*. ¶ 158.

## II.     Defendant Allegedly Steals Confidential Information

In January, 2017, before Plaintiff learned about the conduct described above, Plaintiff and Defendant executed a confidentiality and non-solicitation agreement. *Id*. ¶ 13; Ex. A. Among other things, the confidentiality agreement states:

> During the Restricted Period [18 months after termination of employment], Employee shall not, directly or indirectly, solicit, divert, sell, service, interfere with, accept or otherwise attempt to convert any insurance or other business, products or services from or with respect to any Customer or Prospective Customer of the Company on behalf of a Competing Business.

*Id*. ¶ 14; Ex. A §§ 7.2, 1.7.  Additionally, it provides that Defendant will not disclose any of Plaintiff's confidential information for three years following her employment. *Id*. ¶ 15; Ex. A § 5.2.  The agreement defines "confidential information" as "any information not generally known that the Employee obtains concerning and/or relating to the Company . . . ." *Id*. ¶ 16; Ex. A § 1.2.

By November, 2017, following her termination from Plaintiff, Defendant began working at Plaintiff's competitor, Independent Finance Associates. *Id*. ¶ 161.  Since learning of Defendant's new employment, ten of Plaintiff's clients have requested to transfer their accounts to Independent Finance Associates. *Id*. ¶ 164.  Plaintiff alleges that Defendant shared its confidential information with her new employer to steal these clients. *Id*. ¶¶ 162, 163.

Based on these allegations, Plaintiff brings the following four claims against Defendant: (1) violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), (2) civil theft, (3) violation of the Florida RICO act, and (4) breach of contract. D.E. 21 ¶¶ 165, 178, 187, 197.

## PROCEDURAL HISTORY

Plaintiff filed its complaint on February 23, 2018.  D.E. 1.  Defendant moved to dismiss that complaint, and in response, Plaintiff filed the operative amended complaint by right.  D.E. 21.  Defendant moved to dismiss again on substantially the same grounds.  D.E. 26.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) provides that a plaintiff's pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Supreme Court has stated that a plaintiff must submit "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In considering a motion to dismiss for failure to state a claim, the "plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678)).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).  Although "[a] plaintiff need not plead 'detailed factual allegations[,] . . . a formulaic recitation of the elements of a cause of action will not do,'" and the plaintiff must offer in support of its claim "sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'"  *Simpson*, 744 F.3d at 708 (quoting *Twombly*, 550 U.S. at 555)).

## ANALYSIS

Defendant moves to dismiss all counts for failure to state a claim.  She also moves to dismiss the federal and state RICO claims for failure to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9.

### I.     Federal and State RICO

To state a RICO claim, a plaintiff must allege that the defendant "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (internal quotations and citations omitted); *see also* 18 U.S.C. § 1962(c).  A plaintiff must also plead that the defendant's RICO violation injured the plaintiff's business or property.  *Id*.  The federal and state RICO statutes are nearly identical and so pleading failures apply equally to both.  *Banderas v. Banco Central del Ecuador*, 461 So.2d 265, 269 (Fla. 3d DCA 1985) ("The Florida RICO Act, promulgated in 1977, is nearly identical to the Federal RICO statute . . . .  Thus, we can also look to a wealth of material on the Federal RICO statute for guidance on this issue.").

#### A.  Plaintiff Has Not Alleged A Pattern of Racketeering Activity

A "pattern" of racketeering activity "is shown when a racketeer commits at least two distinct but related predicate acts." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1292 (11th Cir. 2010) (quoting *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1283 (11th Cir.2006)).  The predicate acts must be both related to one another and continuing.  *Maiz v. Virani*, 253 F.3d 641, 671 (11th Cir. 2001); *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1265 (11th Cir. 2004).  Continuity may be closed-ended or open-ended.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241–42 (1989).  To show closed-ended continuity, a plaintiff must allege that a conspiracy

existed for a "substantial" period of time. *Id*. To show open-ended continuity, a plaintiff must allege "a specific threat of repetition extending indefinitely into the future." *Id*. at 242.

                1) <u>Closed-ended continuity</u>

Neither the Eleventh Circuit, nor any other, has set down a minimum amount of time that is "substantial," but one year is too short. *See Jackson*, 372 F.3d at 1266–67 (collecting cases). Even three years may be too short. *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995). But the length of time is not the only consideration in closed-ended cases. A court should also consider the number of victims, the presence of separate schemes, the occurrence of distinct injuries, the number and variety of racketeering acts, the complexity of the scheme, and the nature and character of the unlawful activity. *Jackson*, 372 F.3d at 1267 (collecting factors from other cases). Where the RICO scheme is not very extensive, even a scheme lasting several years may not be "substantial." *Id*. at 1267; *Edmonson*, 48 F.3d at 1264 (finding no closed-ended continuity where scheme lasted three years but was limited in scope, most acts occurred in a short periods of time within the three years, and there were only a few victims).

Here, taking these factors into consideration, the court concludes that Plaintiff has failed to plead plausibly closed-ended continuity. Plaintiff alleges that the scheme lasted for less than two-and-a-half years. D.E. 21 ¶ 191. The vast majority of the acts occurred in either a five-month period in the middle of 2017, or a three-month period at the end of 2016 into the beginning of 2017. *Id*; *compare Edmonson*, 48 F.3d at 1264. Additionally, the scheme is not alleged to be complex. It had one participant, one goal, one type of fraudulent conduct, and only one discrete injury.[1] Given the limited extent and harm of the alleged conspiracy, two-and-a-half

---

[1] Although Plaintiff alleges that Defendant sent fraudulent emails to third parties, Plaintiff does not allege that those parties were harmed by the false emails—nor is it obvious how they could have been. The only party alleged to

years are insufficient to establish closed-ended continuity.  *See, e.g.*, *Edmonson* 48 F.3d at 1264; *Jackson*, 372 F.3d at 1267; *Ferrell v. Durbin*, 311 F. App'x 253, 256 (11th Cir. 2009) ("Given the scant allegations, the limited time frame, the single scheme and the existence of only two victims, we conclude that the complaint did not sufficiently allege closed-ended continuity.").

2) <u>Open-ended continuity</u>

As stated above, to show open-ended continuity, a plaintiff must allege "a specific threat of repetition extending indefinitely into the future."  *H.J. Inc.*, 42 U.S. at 242.  Plaintiff alleges that Defendant was terminated after her allegedly fraudulent conduct was discovered, and accordingly, there is no specific threat of open-ended continuity.  Plaintiff, however, argues that Defendant's termination is merely a "fortuitous interruption," and that, as such, Defendant "should receive no credit or benefit of the doubt for any purported halt to her pattern of wire fraud."  D.E. 28, p. 6.  In support of this argument, Plaintiff cites a Florida Supreme Court case, which held that a fortuitous interruption, such as an arrest, does not stop the threat of continuity where the enterprise of which the defendant was a member could continue the criminal activity.  *Lugo v. State*, 845 So. 2d 74, 100 n.50 (Fla. 2003).  Here, however, there is no enterprise capable of continuing Plaintiff's alleged fraud.  Moreover, the only allegation in the amended complaint that suggests a future threat of harm is: "[Defendant's] fraudulent business practices continue, on information and belief, as she works in the industry."  D.E. 21 ¶ 174.  This unsupported allegation falls far short of Rule 9(b)'s heighted pleading standard for fraud.  *See generally Am. Dental Ass'n*, 605 F.3d at 1291.  Accordingly, Plaintiff has failed to allege open-ended continuity.

---

have suffered harm is Plaintiff itself, who paid Defendant inflated commissions of $186,579, and incurred $515,000 in costs to revise the policies.  D.E. 21 ¶¶ 158, 185.

### A. Plaintiff Has Alleged Wire Fraud with Particularity

To state a claim for wire fraud, a plaintiff must allege that a defendant (1) intentionally participated in a scheme to defraud another, and (2) used the wires in furtherance of that scheme. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). A RICO claim predicated on wire fraud is subject to Rule 9(b)'s heightened pleading standard, "which requires that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* (quotations omitted). To satisfy Rule 9(b) a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id.* Where, as here, however, the plaintiff can demonstrate injury as a direct consequence of fraud committed against a third party, the plaintiff need not show that it relied on the defendant's predicate fraudulent act. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648–49 (2008).

Plaintiff's allegations satisfy the heightened pleading requirements. Plaintiff identifies with specificity each allegedly fraudulent email, how it was fraudulent, the day it was sent, to whom it was sent, and how it deceived them. *See generally* D.E. 21 ¶ 171. Plaintiff does not explicitly allege that Defendant acted with fraudulent intent, but at the pleading stage, intent may be alleged generally. *See* Fed. R. Civ. P. 9(b). And where as here the allegations, taken as true, point unerringly toward deceptive intent, it may be inferred. *See, e.g.*, *Innovative Biometric Tech., LLC v. Lenovo (United States), Inc.*, No. 09-81046-CIV, 2010 WL 11447535, at *3 (S.D. Fla. Oct. 12, 2010) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 n. 5 (Fed. Cir. 2009).

B.  Plaintiff Has Alleged Proximate Causation and Damages

In the RICO context, proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 464 (2006), (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  A link that is "too remote," "purely contingent," or "indirect" is insufficient. *Id.* at 457.  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Southeast Laborers Health & Welfare Fund v. Bayer Corp.*, 444 Fed.Appx. 401, 410 (11th Cir.2011) (citing *Anza*, 547 U.S. at 464).

Defendant argues that Plaintiff has not alleged damages or proximate causation.  On the contrary, however, Plaintiff has alleged that, as a result of Defendant's fraud, it paid her commissions to which she was not entitled, it expended time and money to investigate the extent of her fraud, and it paid more than $515,000 in costs to revise coverage on the policies.  D.E. 21 ¶ 158.  As to these damages, therefore, Plaintiff has alleged proximate cause.

**II.    Civil Theft**

To state a claim for civil theft, a plaintiff must plead the statutory elements and criminal intent. *Florida Desk, Inc. v. Mitchell Int'l, Inc.*, 817 So.2d 1059, 1060–61 (Fla. 5th DCA 2002). The statutory elements are: (1) a person knowingly obtains or uses, or endeavors to obtain or use, (2) the property of another, (3) with the intent to temporarily or permanently (a) deprive the person of the right or benefit of the property, or (b) appropriate the property to his or her own use or the use of another.  Fla. Stat. § 812.014(1).

Defendant argues that Plaintiff has failed to state a claim because the complaint does not allege that Defendant acted with intent or deprived Plaintiff of any benefit.  Plaintiff responds

that intent may be inferred from the allegations of fraud, and that it has adequately pleaded a lost benefit in the form of $186,579 paid to Defendant in commissions that she did not truly earn.

The Court is satisfied that Plaintiff has pleaded that Defendant deprived it of a benefit in the form of unearned commissions. *See Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1266 (S.D. Fla. 2011) (finding that a plaintiff stated a claim with regard to falsely obtained commissions). The Court is also satisfied that Plaintiff has adequately pleaded criminal intent. Plaintiff's civil theft allegations are premised on the same allegations as its RICO allegations, and those allegations are sufficient, at the pleading stage, to raise an inference that Plaintiff acted with intent to defraud. *See Innovative Biometric Tech., LLC v. Lenovo (United States), Inc.*, No. 09-81046-CIV, 2010 WL 11447535, at *3 (S.D. Fla. Oct. 12, 2010) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 n. 5 (Fed. Cir. 2009). Defendant, moreover, has provided the Court no case law holding that intent to defraud is insufficient to establish criminal intent, and the Court is aware of none. Accordingly, Plaintiff has stated a claim for civil theft.

### III. <u>Breach of Contract</u>

To state a claim for breach of contract, a plaintiff must plead: (1) the existence of a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co.*, LLC, 175 F.3d 913, 914 (11th Cir. 1999). Here, Plaintiff has adequately alleged that it entered into a valid confidentiality and non-solicitation agreement with Defendant. But the only factual allegation supporting an alleged breach is that some of Defendant's former clients asked Plaintiff to transfer their accounts to Defendant after she started a new job. Plaintiff has not alleged facts tending to show that Defendant solicited these clients or used Plaintiff's confidential information. The inference that Plaintiff solicited these clients is speculative and outweighed by the inference that

these clients simply wanted to continue working for Defendant and chose, of their own free will, to do so. This single, inconclusive factual allegation is not sufficient to allege breach. After all, the fact-pleading requirement exists to prevent a plaintiff from using speculative claims like this one to conduct fishing expeditions. *See Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006) ("[G]ood cause for discovery cannot arise from mere speculation."). Accordingly, Plaintiff has failed to state a claim for breach of contract.

## **CONCLUSION**

For the reasons discussed above, it is hereby

ORDERED AND ADJUDGED that the motion (D.E. 26) is GRANTED IN PART AND DENIED IN PART. Counts I, III, and IV, are DISMISSED WITHOUT PREJUDICE and with leave to amend. It is further

ORDERED AND ADJUDGED that Plaintiff SHALL file a second amended complaint that either corrects the deficiencies identified herein or removes any or all of Counts I, III, and IV no later than **Friday, July 13, 2018.** Plaintiff may not add any new claims to the second amended complaint without leave of court. It is further

ORDERED AND ADJUDGED that the Initial Planning and Scheduling Conference in this matter is hereby RESET to **Friday, August 3, 2018.**

DONE AND ORDERED in Chambers at Miami, Florida, this 3d day of July, 2018.

*Ursula Ungaro*

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

cc: counsel of record via cm/ecf