UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-20726-UU

THE HAYS GROUP, INC.,

    Plaintiff,

v.

DEBORAH AICHELE,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss Count II of the Second Amended Complaint (D.E. 44).

THE COURT has considered the motion and the pertinent portions of the record and is otherwise fully advised in the premises.

Because Plaintiff has not corrected the deficiencies previously identified by the Court, the motion is granted.

## BACKGROUND

The facts recited here come from the second amended complaint (D.E. 36).

Plaintiff, The Hays Group, is a Minnesota insurance brokerage corporation. *Id.* ¶ 7. Defendant, Deborah Aichele, is a Florida resident and former employee of Plaintiff's. *Id.* ¶ 9, 12. Defendant started working for Plaintiff in 2009. *Id.* ¶ 12. She specialized in selling Dealer Open Lot ("DOL") policies to automobile dealers. *Id.* ¶ 17.

### I.    Defendant Allegedly Creates False Policies and Inflates Coverage

In 2017, while Defendant was on vacation, Plaintiff discovered that Defendant was issuing insurance certificates with inflated coverage amounts. *Id.* ¶¶ 18–20. She also created

1

fake insurance policies that she presented to some insureds. *Id*. Plaintiff provides examples of 26 clients (identified with pseudonyms) for whom Defendant allegedly created fake policies or inflated coverage. The Court describes a few of them here, but it is not necessary to describe all 26.

    1.  Client A

Client A purchased a $20 million DOL policy, with a flood limit of $5 million. *Id*. ¶ 26. Defendant, however, created a certificate of insurance showing that the policy coverage was $70 million. *Id*. ¶¶ 27, 28. She then emailed that certificate to the lender, BB&T. *Id*. Meanwhile, she created a policy for the insured showing $50 million in DOL coverage with $35 million for flood coverage. *Id*. ¶ 30.

    2.  Client B

Client B purchased a DOL policy with $750,000 in per-occurrence flood and weather coverage. *Id*. ¶ 34. The policy included excess flood and weather coverage of $10 million per occurrence, and comprehensive and collision coverage of $1million. *Id*. Defendant, however, created a certificate showing that the policy had a total limit of $105 million and emailed it to the lender. *Id.* ¶ 35. Meanwhile she created a proposal for the insured showing $82 million in total DOL coverage. *Id*. ¶ 36. Plaintiff makes similar allegations with respect to the other 24 clients. *See id.* ¶¶ 38–155.

On September 29, 2017, after Plaintiff found out about these false policies and inflated coverage amounts, it terminated Defendant's employment. *Id*. ¶ 157. It also expended time and money to resolve these issues for the insureds, and incurred more than $515,000 in costs to revise coverage on the policies. *Id*. ¶ 158.

## II.   Defendant Allegedly Steals Confidential Information

In January, 2017, before Plaintiff learned about the conduct described above, Plaintiff and Defendant executed a confidentiality and non-solicitation agreement. *Id.* ¶ 13; Ex. A. Among other things, the confidentiality agreement states:

> During the Restricted Period [18 months after termination of employment], Employee shall not, directly or indirectly, solicit, divert, sell, service, interfere with, accept or otherwise attempt to convert any insurance or other business, products or services from or with respect to any Customer or Prospective Customer of the Company on behalf of a Competing Business.

*Id.* ¶ 14; Ex. A §§ 7.2, 1.7.  Additionally, it provides that Defendant will not disclose any of Plaintiff's confidential information for three years following her employment. *Id.* ¶ 15; Ex. A § 5.2.  The agreement defines "confidential information" as "any information not generally known that the Employee obtains concerning and/or relating to the Company . . . ." *Id.* ¶ 16; Ex. A § 1.2.

By November, 2017, following her termination from Plaintiff, Defendant began working at Plaintiff's competitor. *Id.* ¶¶ 161, 165.  Since learning of her move, several clients of Plaintiff's contact Plaintiff to ask that it transfer their accounts to Defendant at her new place of work. *Id.* ¶¶ 169.  Additionally, one client contacted Defendant on a phone number that belonged to her when she still worked at Defendant and asked for her contact information "to make the move." *Id.* ¶ 167. Another inadvertently sent a policy renewal spreadsheet to Defendant's former email address, which included the name of Defendant's new employer. *Id.* ¶ 168.  Plaintiff alleges that these clients moved to Defendant's new employer because Defendant solicited them and used Plaintiff's confidential information in violation of the confidentiality agreement. *Id.* ¶ 183.

Based on these allegations, Plaintiff brings two claims against Defendant: (1) civil theft, and (2) breach of contract.

## PROCEDURAL HISTORY

Plaintiff filed its complaint on February 23, 2018.  D.E. 1.  Defendant moved to dismiss that complaint, and in response, Plaintiff filed an amended complaint by right.  D.E. 21. Defendant moved to dismiss again, and on July 5, the Court granted the motion in part.  D.E. 34. It held that Plaintiff had stated a civil theft claim, but failed to state a RICO or breach of contract claim.  *Id*.  Plaintiff dropped the RICO counts from the second amended complaint.  *See* D.E. 36.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) provides that a plaintiff's pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Supreme Court has stated that a plaintiff must submit "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In considering a motion to dismiss for failure to state a claim, the "plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678)).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).  Although "[a] plaintiff need not plead 'detailed factual allegations[,] . . . a formulaic recitation of the elements of a cause of action will not do,'" and the plaintiff must offer

4

in support of its claim "sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Simpson*, 744 F.3d at 708 (quoting *Twombly*, 550 U.S. at 555)).

## **ANALYSIS**

The Court previously ruled that Plaintiff stated a civil theft claim, so that count is not at issue.[1]  Defendant moves to dismiss the breach of contract claim on the basis that Plaintiff has not alleged facts tending to show that Defendant solicited Plaintiff's clients or used Plaintiff's confidential information.

The Court previously dismissed the breach of contract claim because the only factual allegation supporting an alleged breach was that some of Defendant's former clients asked Plaintiff to transfer their accounts to Defendant after she started a new job.  The Court ruled that Plaintiff did not allege facts tending to show that Defendant solicited these clients or used Plaintiff's confidential information.  The inference that Plaintiff solicited those clients was speculative and outweighed by the inference that these clients simply wanted to continue working for Defendant and chose, of their own free will, to do so.  *See* D.E. 34 (citing *See Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006) ("[G]ood cause for discovery cannot arise from mere speculation.")).

Plaintiff has not corrected this deficiency in the second amended complaint.  It has added two new allegations:  (1) that one client called Defendant's former address to ask for the name of her new company so that it could move its account; and (2) that one client emailed a spreadsheet to Defendant's former email address that included the name of Defendant's new company.  These new allegations do not tend to show that Defendant solicited these clients or used Plaintiff's confidential information.  Quite the contrary, the first allegation strongly supports the inference that Defendant's clients chose to move with her of their own free will.  *See* D.E. 36 ¶

---

[1] Defendant filed an answer to the civil theft claim on July 27, 2018.  D.E. 43.

167 (email stated: "I really need to make the move. Would like to set up a meeting soon. Missing you!!"). The second allegation only confirms that the client moved or was considering moving to Defendant, but does not tend to show that Defendant solicited it or used Plaintiff's confidential information. Accordingly, the breach of contract claim fails again to plead breach. As this is Plaintiff's third unsuccessful attempt to plead this claim, the Court dismisses it with prejudice. *See Welch v. Laney*, 57 F.3d 1004, 1009 (11th Cir.1995) (affirming dismissal with prejudice after three failed tries)

## **CONCLUSION**

For the reasons discussed above, it is hereby

ORDERED AND ADJUDGED that the motion (D.E. 26) is GRANTED. Count II is DISMISSED WITH PREJUDICE.

ORDERED AND ADJUDGED that the Initial Planning and Scheduling Conference in this matter is CANCELLED. The Court will shortly enter a trial order.

DONE AND ORDERED in Chambers at Miami, Florida, this _28th_ day of August, 2018.

*/s/ Ursula Ungaro*

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

cc: counsel of record via cm/ecf